All right, we'll call the first case, United States v. Colon. Counsel for appellant. May it please the court, Allison Brill, Office of the Federal Public Defender for the District of New Jersey, on behalf of Pasquale Colon. Could you say your name more clearly? Sure, Allison Brill. Allison. And I'd like to reserve three minutes for rebuttal. Three minutes, very well. This case is about whether Pasquale Colon was entitled to an explanation of the District Court's reasons for denying his motion. We have to ask you to raise your voice and maybe bring the microphone down and talk slower because we want to think about what you're saying while you're saying it. This case is about whether Pasquale Colon was entitled to an explanation of the District Court's reason for denying his motion for early termination of supervised release. Is that the whole thing the case is about? Aren't you also asking us to reverse and say he should and say you want more, you want the substance as well as just the explanation, isn't that right? I would not have this court rule that early termination is appropriate. It is in the province of the District Court so long as the District Court makes... I'm having trouble understanding you. Okay. I'd like this court to remand the case and go back for an explanation of reasons. With that remand, this court should join its sister circuits in setting forth a standard that complies with the current standard for termination of supervised release, rejecting the long-asserted standard of exceptional conditions requiring early termination. You don't think we should accept the Second Circuit's view of this? The Second Circuit's view in Lucere was not even an early termination case. It was actually... Well, I know it wasn't. But why wouldn't we? So exceptional circumstances suggest that early termination should be the exception rather than something that's an appropriate consideration in the appropriate case. Before remand, we have to determine, don't we, that it falls outside of the appellate waiver? We do. And this case is clearly... The motion for early termination is clearly outside the scope of Mr. Colon's appellate waiver. The best reason to show that it's outside the scope is that the government itself concedes that Mr. Colon could have brought the motion. When the government is discussing why Mr. Colon should have gone back for reconsideration, it suggests two times that Mr. Colon could have brought another motion for early termination. But he did promise in the appellate waiver that he was not going to bring any motions respecting his sentence. The sentence imposed. And he did not... And supervisory release, we have said, we said in Goodson, is part of a sentence. And this court in Wilson also said that with respect to appealing a modification of a term of supervisory release, that it was not part of a sentence imposed. It was a different proceeding. Would you help me understand something? The record tells me that he wants to go to Pennsylvania. We're in Pennsylvania, but he wants to go from New Jersey to somewhere in the Poconos to start a new life. Is that right so far? It is correct, except that he would continue with his job in New Jersey, so he would relocate. He just wants to relocate to live somewhere in the Poconos. Yes. Well, in cases like this, I have seen persons under supervised release simply make an application to transfer their supervision to another district. Yes. Why doesn't he do that instead of what appears to be he just wants to stop supervisory release completely? He has transferred before. He began in the Eastern District and moved to New Jersey. The question is if supervision continues to be necessary in his life. I don't understand. What could he do if we were to grant his motion, or the district court would have granted his motion, that he can't do now? He could live his life not under the obligation to file a monthly report. Why is that such a burden? I mean, he did commit a crime. He did commit a crime. He served 84 months in prison and has served at this point two and a half years of supervised release. Yes. So, but, I mean, why does he all of a sudden become free? I mean, what's the point of the motion? What does he really want? And it goes back to what the point of supervision is. It's to help offenders transition back into society, which he has made an application to demonstrate that he has done. Yeah, well, all the courts say that. The Supreme Court says that, too. But I'm not sure I understand why being under supervised release is such a burden. For the offender who has been under criminal justice supervision? Yeah, for the person who made the motion. He's been under criminal justice supervision for, or incarcerated for, a good portion of his adult life, almost his entire life. So what? And so the burden for him and the success that he feels having transitioned out, it's appropriate to make a motion. And then the question is? Well, all you're saying is he's making the motion because he wants to make the motion. But I'm still not sure, what is it that he could do if the motion were granted that he can't do now? He could do a lot of things. Like what? Like leave the state without asking permission, like travel to Pennsylvania for the day without asking permission. He could take a trip with his child without asking permission and waiting for the authorization and filling out a travel agency. His child is five months old. He's also the, he has his soon-to-be ex-wife's son is also a stepson of his. He has a six-year-old as well. And he has family members. He has a life. And supervision does create a burden on his ability to move. He knew that when he pled guilty and when he signed the appellate waiver. How do you get around the fact that he's given a mandatory four-year supervisory release term? And as I see the record, he's only done about two years, two and a half. Two and a half years at this point, almost two years when he filed. The weight of the case law is that you can impose a mandatory term of supervision and also read the statute for early termination as mutually exclusive. Mandatory doesn't mean mandatory? Mandatory means when it's imposed. And certainly he did not object to that. It wasn't objectionable. Mandatory means mandatory only when it's imposed? In this case, that is what the courts have interpreted. Did he speak to his probation officer about whether the probation officer supported terminating supervised release? He spoke to the prior probation officer at the time we filed the motion. He had just transferred supervision. Just the caseload changed and he hadn't yet met with him until the day before. Because wouldn't, I mean, wouldn't that be if you've got your probation officer standing beside you saying, this guy has fulfilled every requirement we can see of moving back into society. He's close to his family. He's working. We see no chance of recidivism. And as his probation officer, I support this. Isn't that presenting a much, isn't it worth building a stronger case like that? It absolutely is. My understanding in the District of New Jersey is that probation officers do not support an application. They will speak to the judge off the record, but they do not come and support. They might recommend somebody come to our office and file a motion. You're not allowed to? I believe it's their policy not to support motions for early termination. So you have no case in our circuit that would support your view that despite a mandatory supervisory release term, that term can be reduced? I think the best case law would be the revocation case law, which is 3583E3, where a mandatory term is imposed and then upon revocation, there's no requirement that the entire term of supervisory release be served. I do see a case that seems to cut directly against you, a U.S. v. Lane. Sorry. Familiar with it? Familiar. Really quickly, the case that I was referencing on the revocation would be Turlington. Did you say Templeton? Turlington, 696 Fed 3rd, 425. Could you repeat that? Sure. U.S. v. Turlington, 696 Fed 3rd, 425. It's a Third Circuit case from 2012. You presented that case in support of what? That was a case where there was a mandatory revocation and there was no supervisory release imposed afterwards. It was actually a question of if the FSA applied. There was a mandatory revocation? There was a mandatory revocation, and the question was if the FSA required imposition of a father term. Because of the amendment? Because of the amendment of the Platt-Retroactive to the mandatory term of imprisonment, but there was no supervisory release imposed afterwards, even though there had been a mandatory term beforehand. I'm thinking of the consequence. If we were to agree with your view that despite a mandatory term of supervisory release, a defendant may nonetheless come to court and get that reduced, despite that the defendant can seek to transfer supervision. But, you know, if I look down the road at what can happen, every defendant is going to be very pleased by this decision because no matter what the supervisory release term, everybody wants it reduced, despite an appellate waiver that says I will not do that. Two things. This is outside the scope of the appellate waiver. The appellate waiver was about the sentence imposed. This Court in Wilson has been clear that 3583 proceedings, which proceed under Federal Rule of Criminal Procedure. Wait a minute. You're going fast again. You say this is outside the scope. This is outside the scope, and the proceedings are under 3583 and Federal Rule of Criminal Procedure 32.1. If we don't agree with you that this is outside the appellate waiver, then you're pretty much done, right? Then the Court also has to look at if it was knowing and voluntary and if it would be a miscarriage of justice not to enforce the appellate waiver. In this case, Mr. Colon actually proceeded per se, and the record on the knowing and voluntary is very brief. Mr. Colon was about to proceed to trial, and then he was in lockup and spoke with a prosecutor, came upstairs, had the appellate waiver, and the judge is on A103 of the appeal. The judge said something about the 96-month terms. It was per se because that's what he wanted. Yes, but to the extent that he consulted with a lawyer, and that's usually written in the plea agreement that he consulted with the lawyer. It's usually asked during the plea allocation that he consulted with the lawyer. It's hard to say it was a miscarriage of justice when it was within the guideline. Well, there are other reasons that it could be a miscarriage of justice to apply the appellate waiver. It could be that this stretch of how far the scope of the appellate waiver goes has never been applied before, and it would be unfair to apply it in a per se case. There's a lot of different ways. It does seem that this has never been within the scope of the appellate waiver, but in the Lane case that Your Honor mentioned, Lane was per se summary affirmance. And it's non-precedential. And non-precedential. And respectfully, the reasoning in Lane that it was an end round around the waiver is not the case here. Mr. Coleman served 84 months and two years as supervisor, at least, before bringing this motion. He never appealed the terms that he originally had. We'll get you back on rebuttal if you have another question. No, I'll make one. Okay. Thank you, Ms. Brown. We'll get you back. Ms. Mickelson. Would somebody please let those people sit down? You're welcome. May it please the Court, Assistant United States Attorney Debra Prisanzato-Mickelson on behalf of the government. I have the same thing to ask you that Judge Wood asked the appellants. Please talk slowly and let us hear you. I will, Your Honor. Thank you. Judge Wood, you're correct. There are two procedural bars before this Court even meets to reach the merits of whether or not Judge Pisano abused his discretion in denying the motion for early termination. And why did he do it? Did he tell us why he did it? Your Honor, the district court entered an order that said he had considered the defendant's application for early termination. Yeah, that's not a reason. I mean, that just says what I did. Is there any reason on the record that we can look at that tells us what happened? Your Honor, of course you can look to the order where the motion was denied, and you can look at the record. Well, we know the motion was denied. That's why it's on appeal. But the question is, do we have any way of knowing why the judge decided to use his discretion to deny? Yes, Your Honor. Reasons, using the language of the recent D.C. Circuit opinion in Mathis-Gardner, reasons leap out from the record. Well, but some of those reasons, one of the cases, for instance, that the government cited, one of the reasons is wrong in this situation, that the nature of the crime is not one of the considerations that one should give on a petition for revocation, termination of supervised release. And yet we don't know if that was an element in the judge's calculation or not. So that if we look at the record, we can see that it might have been for a bad reason or it might have been for a good reason. And shouldn't the judge let us know what reason it was that persuaded him? Your Honor, the Justice Court here certainly could have done more to explain this. Should have done more. I disagree, Your Honor. Well, it depends on what we'll end up saying. True, Your Honor. But looking at the guidance from the Supreme Court in Rita, the Supreme Court, in a sentencing context, has explained that the brevity or length, conciseness or detail, when to write, what to say, it depends on the circumstances. And sometimes... But when the circumstances include invalid reasons as well as valid reasons, don't you at least have to set out your reasons to know that they were valid reasons? Respectfully, Your Honor, the government's reasonings were not invalid. Well, I mean... We don't know. In determining supervised release, the nature of the crime is not a consideration. Now, you say, oh, well, the interest of justice. To me, that is not a good argument. And I think when you have the specific omission of the nature of the crime, that to say, oh, well, we can stick it in the back door, that makes no difference. As far as I'm concerned, there were reasons the government argued against termination that are not considered valid reasons for consideration in awarding or terminating supervised release. And how do we know what the reasons were, as Judge Sloboda said, that the district court considered, unless the district court says something more than I considered it? Two answers, Your Honor. One, there is case law cited in the government's brief in cases from the Second Circuit where it is not improper for a district court to consider the seriousness of the offense 3553A2, which is omitted from the list of factors in 3583E. However, it's not precluded. If there's nowhere and no case, does it say that a district court can't consider the seriousness? Well, we don't know if the district court, I mean, all we can do, we look at a cold record. All we can do, and we have a job to do, we have a function, and we don't know how or why it was done. Respectfully, Your Honor, following other circuit cases, there's enough here. Why don't we leave that and move on to the next one? I'd like to talk about waiver because supervised release is focused on the ability of the former prisoner to reintegrate into society, and how can you say that that element of his future life is included in a waiver that's given at the time of the guilty plea, acknowledging what the punishment should be, but he's served the incarceration. If he demonstrates before four years are up that he has reintegrated into society, that he's gainfully employed, that he has a close family relationship, that he's committed no significant criminal activity, that he's not back into drugs again, hasn't supervised release achieved what it's supposed to be, and looking upon it as a focus on post-imprisonment conduct, isn't it inappropriate at the time of the guilty plea to say you're waiving something that's going to happen eight years down the pike without knowing whether he's going to adjust well being back in society or not? I know that's a long question. Well, Your Honor, I'd like to begin my answer with starting with the waiver language, which is any appeal. And this Court has held, considering a similar appeal waiver, that any means any. And what the government contracted for with the defendant in the guilty plea is not to be here today. But does the government want to pay for supervised release if this guy has demonstrated that he is back into the community, adjusted back into the community, and has no need for supervision? Well, I think that goes to whether or not the government would invoke the waiver in the context of filing the motion with the district court, which is a different situation. What the government is invoking the appellate waiver is the right not to be here today dealing with an appeal. Well, we like having you here. Thank you, Your Honor. It's a pleasure to be here. It's my first time. Oh, good. Well, you're standing up well to the baron. Thank you. What the government contracted for us is not to have to deal with any appeal. And this is an appeal. And it is certainly a lot more burden on the government to deal with an appeal. Is it clear from the waiver form that he also gave up his right to seek a motion for a reduction of the supervisory release term? Is there a separate statute that allows him to do precisely what he did? 3583E1, the ability to file a motion for early termination. Yes, Your Honor. Does the plea waiver trump that statute? Your Honor, that's an interesting question. And it certainly, I do believe our waiver is broad enough to encompass that. In this case, the government didn't seek to invoke that waiver in the district court. We are seeking to invoke the waiver now with respect to filing any appeal because at its core, what this court in a non-presidential opinion held in Lane was that what the defendant is seeking to do is to shorten his sentence. It's not really a very good idea to quote non-presidential opinions to us. Well, we write them. Your Honor, it was raised by my appellant. I opened the can of worms. We can move on. Your Honor, the government also is advancing the argument that there's a mandatory term of supervision here. The statute, and there is no case law from this circuit that holds that this district court would have the authority under 3583E1 to terminate supervised release early. You're holding that notwithstanding the statute that you would have us hold that there's no authority for the district court to do this? I thought it was clear that the government took the position that the district court was authorized. Your Honor, we didn't raise this in the district court either, but this court can – Well, then you've raised it. This court can affirm the district court's reasoning for any reason, even if it was not presented in the district court, which – Nothing. And, Your Honor, there's no case law that holds – as Your Honor is well aware, there was a Sixth Circuit case law, Spinell, which said that notwithstanding the language of a mandatory term of supervised release, that the district court still had the discretion under 3583E1 to terminate early. After that, the statute 841 was subsequently amended to include the language notwithstanding 3583, therefore removing the discretion from the district court, the ability to terminate supervised release early. Mandatory means mandatory. It's not mandatory for one year of supervised release to be followed by three years of discretionary supervised release. So you're saying when there's an appellate waiver, a district court can never consider an application to reduce a defendant's term or a person who's under supervisory releases term on an application for reduction? Never reduce it? When there's a mandatory term of supervised release. In any waiver? Well, I think they're two separate issues, Your Honor. There's the appellate waiver – statutory mandatory period, which is four years. Is that correct? Correct, Your Honor. Whenever that's imposed, you could never reduce that four-year term? Correct. And that's Mr. Colon's circumstance here? Correct. And was he advised of this? Was he advised of the mandatory term of supervised release? Yes. It could never be reduced? He was advised that he was receiving a mandatory term of supervised release of four years. Does that mean that the appellate waiver doesn't factor in here? All you have to say is it was a mandatory term of supervisory release. Your Honor, if you agree with the government – I'm not sure I agree, but the way you put it, there's no point in raising the appellate waiver. Absolutely, Your Honor. It's statutory. Yes. Now, if you disagree with the government, then you need to reach the question of the appellate waiver. And if you disagree with the government there, then we review the district court's order on whether or not he abused his discretion and provided an insufficient explanation for denying the motion. Is this the position that you took in the district court? Is what the position – The one that we have just been discussing, that this is mandatory according to the statute, but even if you don't accept that, it is mandatory under the plea waiver. No, Your Honor. That was not presented to the district court. Okay. With respect to – we're writing on a relatively clean slate for this circuit. Would you say that a motion to reduce the supervised release should always go to the judge who set the sentence? In an ideal world, yes, Your Honor. But practically, I don't think you can – I didn't hear what you said at first. In what? In an ideal world, of course, you would prefer. Oh, in an ideal world. But, for instance, in this case, Judge Pisano has since retired. So on remand, this would not go back to him. It would go back to another district court judge. Oftentimes – We decided the case of Goodson, which seems to have some persuasive authority. How does that case figure in with Mr. Colon's application? Your Honor, in Goodson, this court held that not only does the duration, the length, the term, and the conditions of supervised release are all part of the original sentence. And the original sentence here imposed was four years. And Goodson is an appellate waiver case, Your Honor. And if you apply the logic of Goodson, then Mr. Colon should not have the right to appeal from – he should not have the right to bring this appeal, which is a motion at its core to shorten his sentence. Well, Ms. Brill suggests that he was uncounseled when he signed the plea waiver. He was, per se, Your Honor. And we should also consider whether there was a miscarriage of justice in this case. Well, Your Honor, two answers. One, that didn't – Mr. Colon, in his reply brief, didn't challenge that the waiver was entered knowingly and voluntarily. And two, he didn't challenge that it would be a miscarriage of justice. And I think – But he wasn't counseled, I gather. That was his choice. That was his right. He didn't – Yeah, but everybody – I mean, all defendants have that right. But so what? I don't understand. You mean because he had the right, he can't do it now? We can't complain now that he didn't enter it voluntarily and knowingly because he didn't have a lawyer there to help him when he chose not to have a lawyer represent him. Well, I don't know his circumstances. Maybe he didn't have the money. You know, lawyers cost money. Look at them all. Your Honor, if I'm recalling the record correctly, he had at least three attorneys. And, in fact, on the day that he entered the guilty plea, he sought to dismiss his standby counsel, and Judge Pisano rejected his request because he was not entitled to standby counsel. Your Honor, I would alert the Court to its presidential opinion, and I'm not sure I'm pronouncing this correctly, Khatak, K-H-A-T-T-A-K. In that case, this Court held that waivers of legal consequences of unknown future events are commonplace. If the Court is concerned that Mr. Colon didn't know what would happen in the future, that's the precise reason why parties enter into appellate waivers is to be done. It's a finality. And there was an appellate waiver here to be done, that Mr. Colon was to be sentenced, and then there would be no more further proceedings. I apologize. I see that my time is up. Ms. Mikkelson, thank you very much. Thank you. Ms. Brown. Just a few brief responses. On the appellate waiver cases, Goodson was a direct appeal, Khatak was a direct appeal, Banks was a direct appeal, Gwinnett was a direct appeal. There are no cases other than the non-presidential pro se summary affirmance in Lane stating that termination of supervised release and the proceedings under 3583E1 are within the scope of an appellate waiver. I direct this Court to Wilson, 707-Fed3-412, which is the case I was discussing. Could you just give us the citation, and if so, it was fine. Wilson, 707-Fed3-412. What's the number again? 707-Fed3-412. That's a 2013 case. From where? I'm just going to read very quickly. From where? Oh, the Third Circuit. Third Circuit, okay. Third Circuit. Wilson. Yes, authored by Judge Barry. This is the case about the modification. How about Goodson, which seems to be the one case that touches on many of the issues in this case? It seems to cut against you. Except that it is a direct appeal, and this is beyond. A direct appeal of the terms of supervised release, and this is a proceeding under 3583E1 with different procedural requirements. But the language is important that the supervised release is a component of the sentence, and if you sign the document that says, I shall not, I will not appeal my sentence, that includes or make a motion in respect of my sentence, that would seem to include the period of supervisory release. In some circumstances, it is part of the term of the sentence. But it doesn't mean that, for example, in the context of revocation, that a district court, that a defendant could not appeal from a revocation, that there would be no avenue for a defendant to have rights. Was Cologne proceeding on a revocation? It was not. But the more analogous circumstances are 3583E1, E2, and E3. And the defendant and the district court and the government are not so barred by an appellate waiver in those circumstances. They are always considered separate proceedings connected to the original sentence, but a separate procedural phase with rights and obligations. If, theoretically, one were explaining to a defendant about being guilty, what the significance of a four-year mandatory term of supervised release was, would you have to say there's no hope for any sort of reduction in that or termination of that appeal? Or would one have to explain to the defendant that this is going to be mandatory with no hope for relief? I would say that if that was discussed with the defendant at the time of the plea, that might fall within the scope of the appellate waiver, but it would not preclude the court from moving to terminate. Again, as I wrote in page 13 of the reply brief, the government citation to the 2002 statute does not change the ability of the court to terminate. It's about how many years are required. That was resolving a circuit split, not precluding district courts from proceeding under E3. So to answer your question, it would go to the scope of an appellate waiver and not the ability of the court at a future date to terminate early. I would suppose that no matter how good an attorney he had, it would not have changed that four-year term. No.  If I may just conclude briefly. Finish up, yeah. As I began explaining, Mr. Cullen requested this case be remanded for an explanation of reasons. We ask that this court join its sister circuits in requiring an explanation of reasons so that it may have proper appellate review and to reject the changed exceptional circumstances as the governing standard as no longer consistent with the policies and practices of probation offices and district courts. There's a change in the understanding of supervised release. And Mr. Cullen... What is the change? The change is that early termination is a sound policy in certain cases and district courts are encouraged in both the sentencing guidelines, in the judiciary policy, in a cost containment memo to consider early termination as sound and not exceptional. And Mr. Cullen presented the appropriate case and he asked that the district court... Well, if it was sound, if it had been sound, why wouldn't the district court have put that in when the court actually set down the sentence? When the court set down the sentence in 2008? Yeah. Imposed the sentence. Yeah. If it was sound for the defendant to serve less time on supervised release, why wouldn't that have been raised at the actual time of the sentencing? Because this is the kind of motion that is too vague to know at the time of the sentencing, how somebody will do while they're incarcerated, how they will proceed on supervised release. It is truly something that only can occur when the defendant demonstrates that he has made a successful transition. If we don't accept the Lucier, I guess you pronounce it, requirements, what would you say, what should we tell the district judges that they can look to in order to decide whether to grant a prisoner's or parolee's request? Certainly the statute requires consideration of relevant 3553A factors. The monograph 109, the Guide to Judiciary Policy, which is the direction of probation officers, is the district courts, the administrative office of the district courts, setting forth what are relevant factors to what is a successful transition. These are not, these have been in existence for over a decade now and they really do set forth something more specific and individualized in each case for what the 3553A factors in the context of a motion for early termination should be. Ms. Brill, thank you very much. Thank you both for your excellent arguments. And we'll take the case under advisement, call the next case. United States v. Freddie Lopez-Azurea.